O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BRIAN HAN,                          )   Case No. CV 14-08582 DDP (AJWx)
                                    )
                Plaintiff,          )   **ORDER RE: PLAINTIFF'S MOTION FOR**
                                    )   **PARTIAL SUMMARY JUDGMENT**
        v.                          )
                                    )   [Dkt. No. 45]
CITY OF LOS ANGELES; LOS            )
ANGELES POLICE CHIEF CHARLES        )
BECK; RONALD CADE, LOS              )
ANGELES POLICE DETECTIVE II;        )
LOS ANGELES POLICE OFFICER          )
WELLS; LOS ANGELES POLICE           )
OFFICER ANTHONY,                    )
                                    )
                Defendants.         )
_____    )

        Presently before the Court is Plaintiff's Partial Motion for

Summary Judgment.  (Dkt. No. 45.)  After hearing oral argument and

considering the parties' submissions, the Court adopts the

following Order.

I.   **BACKGROUND**

        This civil rights case arises out of Plaintiff Brian Han's

leafleting activities outside a Trader Joe's and Veggie Grill at

Gilmore Farmers Market in Los Angeles, California.  (See generally

First Am. Compl. ("FAC").)  Plaintiff distributes pamphlets that

advocate for a vegan lifestyle and animal rights.  (Han Decl. ¶¶ 1-

4; Pl. Ex. 1.)  On December 8, 2013, Plaintiff was leafleting
outside Trader Joe's when security guards told him to stop
leafleting and leave the private property.  (Han Decl. ¶¶ 5-6.)
Plaintiff asserted his constitutional right to engage in expressive
activity, and the guards called the Los Angeles Police Department
("LAPD").  (Han Decl. ¶¶ 7-9; cf. Boyd decl. ¶ 2 (stating he told
Plaintiff he was banned for disturbing the peace); Pessis Decl.,
Ex. A (LAPD Officer Tomeo Dep.) at 9-15.)  The LAPD officers
confirmed Plaintiff's constitutional right to be on the property
and hand out leaflets.  (Han Decl. ¶ 9; Pl. Ex. 3; but see Pessis
Decl., Ex. A (Tomeo Dep.) at 15-16, 44-45 (stating that the officer
did not believe Plaintiff had a right to pass out pamphlets and was
instead trespassing).)

     That same day, Plaintiff moved his leafleting activities to a
different part of the Farmers Market, where he was again confronted
by the private security guards demanding he stop his activity.
(Han Decl. ¶¶ 10-11.)  The LAPD was again called, and the officers
again confirmed Plaintiff's right to do what he was doing.  (Han
Decl. ¶ 12; Pl. Ex. 3.)  After this encounter, Plaintiff was not
arrested and he was allowed to go to Veggie Grill, a restaurant in
the Farmers Market area.  (Han Decl. ¶ 13.)  The private security
guards then made a "ban notice" about Plaintiff, which stated
Plaintiff was permanently banned from the property for all
purposes.  (Pl. Ex. 4.)

     On December 20, 2013, Plaintiff returned to the Farmers Market
to leaflet with other activists, and was again told by private
security guards to leave the property.  (Han Decl. ¶¶ 14-16; see
also Pl. Ex. 4 (ban notice with handwritten "addendum" regarding

1  Plaintiff's presence on this date).)  Plaintiff maintained he had a
2  constitutional right to distribute his pamphlets and the LAPD was
3  called again.  (Han Decl. ¶¶ 16-18.)  LAPD officers confirmed that
4  Plaintiff's activities were within his rights and Plaintiff was not
5  arrested.  (Han Decl. ¶ 19.)
6      On December 27, 2013, Plaintiff and other vegan activists were
7  leafleting at another part of the Farmers Market property.  (Han
8  Decl. ¶ 20.)  They were approached by the private security guards,
9  and one guard ("Boyd") who had stopped Plaintiff the first time
10 said, "Brian, you know you are banned, right?"  (Han Decl. ¶ 20;
11 Pl. Ex. 4 (ban notice).)  Plaintiff denied that, saying, "No, and
12 my lawyer told me you have no legal basis to ban me, and I've never
13 gotten anything from you guys."  (Han Decl. ¶ 21; Pl. Ex. 14 (Han
14 Dep.) at 88:19-89:7, 97:23-98:1.)  Then, Boyd performed a private
15 citizen's arrest on Plaintiff, with Plaintiff informing Boyd of a
16 pre-existing shoulder injury that was hurt by the handcuffs.  (Han
17 Decl. ¶ 22.)  According to Plaintiff, the LAPD came and when Boyd
18 said Plaintiff was threatening the security guards, one officer
19 said, "Show me."  (Han Decl. ¶¶ 23-24; cf. Pl. Ex. 5 (LAPD
20 report).)  Plaintiff then claims Boyd showed the officers either
21 video or photographs of the incident and the officer stated,
22 "You've got nothing," leading to Plaintiff's release from arrest as
23 the LAPD refused to accept the citizen's arrest.  (Han Decl. ¶¶ 24-
24 25; cf. Pl. Ex. 5.)
25     On January 5, 2014, Plaintiff returned to the Farmers Market
26 with other activists and a lawyer.  (Han Decl. ¶ 26.)  The LAPD was
27 called again, but no arrests were made.  (Han Decl. ¶ 26; Pl. Exs.
28 6 (police report), 14 (Han Dep.) at 160-163; see also Pessis Decl.,

Ex. A (Tomeo Dep.) at 75-77 (discussing that the ban notice was attempted to be served on Plaintiff).)  According to Plaintiff, LAPD Detective Cade and Officer Wells met with security staff at the Farmers Market on January 9, 2014, to discuss the issue of Plaintiff's leafleting and alleged threats to security.  (Pl. Ex. 7 (police report); but see Def. Resp. to Pl. Stmt. Of Uncontroverted Facts at 22 (contesting that this meeting occurred) (citing Pl. Ex. 11).)  On January 12, 2014, Plaintiff returned to the Farmers Market with other activists and was told by Boyd that he was banned.  (Han Decl. ¶ 27.)  Then, the LAPD came, talked over the situation with Boyd and Plaintiff, and Plaintiff was not arrested.  (Han Decl. ¶ 28; Pl. Ex. 8 (police report); but see Pessis Decl., Ex. C (Anthony Dep.) at 27-35 (Officer Anthony believed Plaintiff was criminally trespassing at this encounter).)

     On January 19, 2014, Plaintiff and his fellow activists were leafleting outside the Farmers Market again.  (Han Decl. ¶ 29; Pl. Ex. 14 (Han Dep.) at 168-170.)  Plaintiff claims he was handing out his pamphlets for "well over an hour" before going to Veggie Grill to eat — all without any interaction with the private security guards or LAPD.  (Han Decl. ¶ 29; see also Pl. Ex. 14 (Han Dep.) at 170.)  While in line to order his food at Veggie Grill, Plaintiff was approached by Boyd, another private security guard, and an LAPD officer named Detective Cade.  (Han Decl. ¶¶ 30-31; Pl. Ex. 14 (Han Dep.) at 170-173.)  According to Plaintiff, Boyd said, "Brian, you know you're banned."  (Han Decl. ¶ 31; Pl. Ex. 14 (Han Dep.) at 173.)  Plaintiff responded, "You have no legal right to ban me." (Han Decl. ¶ 31; Pl. Ex. 14 (Han Dep.) at 173.)  Boyd then looked

1  at Detective Cade, who said, "Cuff him."  (Han Decl. ¶ 31; Pl. Ex.

2  14 (Han Dep.) at 174.)

3       Plaintiff was handcuffed inside the Veggie Grill by Boyd and

4  he was taken with uniformed LAPD officers and Detective Cade to the

5  Farmers Market security office.  (Han Decl. ¶ 32; see also Pl. Exs.

6  10 (police report), 15 (LAPD Officer Anthony Dep.) at 37-45, 16

7  (LAPD Sargent Wells Dep.) at 51-61, 74-75; Boyd Decl. ¶ 3.)

8  According to Plaintiff, he informed the officers and security

9  guards of his pre-existing shoulder injury and asked for the

10  handcuffs to be loosened, but neither the LAPD nor the security

11  guards loosened the handcuffs or moved the handcuffs in front of

12  Plaintiff to lessen the pain in Plaintiff's shoulder.  (Han Decl.

13  ¶¶ 34-35; but see Pl. Ex. 15 (Anthony Dep.) at 56-57 (denying any

14  request was made); Boyd Decl. ¶ 5 (admitting request was made but

15  stating that LAPD loosened handcuffs in security office).)  The

16  LAPD then put their handcuffs on Plaintiff, still in a way that

17  Plaintiff stated caused him pain in his shoulder.  (Han Decl. ¶¶

18  35-36; see also Pl. Ex. 15 (Anthony Dep.) at 57.)

19       Plaintiff was taken in for booking and citation at the LAPD

20  station.  (Han Decl. ¶ 37; Pl. Ex. 11 (citation/notice to appear).)

21  Plaintiff was given a Notice to Appear for his citation, but when

22  he attempted to comply with the Notice by appearing in court, he

23  was told by a City Attorney that he was not at the right court.

24  (Han Decl. ¶¶ 37-28; Pessis Decl., Exs. C (Anthony Dep.) at ex. 3

25  (notice to appear), D (Wells Dep.) at ex.2 (same).)  Plaintiff's

26  attorney also attempted to confer with the City Attorney about

27  Plaintiff's citation, but received no response.  (Han Decl. ¶ 38.)

28

1    Plaintiff then filed the current lawsuit in November 2014
2  against Defendants the City of Los Angeles, LAPD Chief Charlie
3  Beck, LAPD Detective II Cade, LAPD Officer Wells, LAPD Officer
4  Anthony, and Does 1-20.  (<u>See</u> Dkt. Nos. 1-3.)  Plaintiff has twelve
5  causes of action:

6    (1)  violation of 42 U.S.C. § 1983 based on unlawful
         seizure, arrest, detention, and imprisonment against
7         Defendants Beck, Cade, Wells, Anthony, and Does 1-9;

8    (2)  violation of § 1983 based on unconstitutional
         retaliation and chilling of Plaintiff's First
9         Amendment rights against Defendants Beck, Cade, Wells,
          Anthony, and Does 1-20;
10

11   (3)  violation of 42 U.S.C. § 1983 based on excessive force
          against Defendants Cade, Wells, Anthony, and Does 1-9;

12   (4)  violations of 42 U.S.C. § 1983 for a <u>Monell</u> claim
          based on
13
              (count 1) Plaintiff's arrest and
14
              (count 2) the unconstitutionality of Los Angeles
15             Municipal Code § 41.24(d)

16        against Defendants City, Beck, and Does 10-20;

17   (5)  violation of 42 U.S.C. § 1983 for failure to train
          against Defendants City, Beck, and Does 10-20;
18

19   (6)  violation of California Civil Rights Act ("Bane Act")
          against Defendants Cade, Wells, Anthony, and Does 1-9;

20   (7)  false imprisonment tort claim against Defendants Cade,
          Wells, Anthony, and Does 1-9;
21

22   (8)  assault and battery tort claim against Defendants
          Cade, Wells, Anthony, and Does 1-9;

23   (9)  negligence against Defendants Cade, Wells, Anthony,
          Beck, and Does 1-20;
24

25   (10) intentional infliction of emotional distress against
          Defendants Cade, Anthony, Wells, and Does 1-9;

26   (11) ratification against Defendants City, Beck, and Does
          10-20; and
27

28   (12) declaratory and injunctive relief against all
          Defendants.

(FAC at 12-29.)  Plaintiff now moves for partial summary judgment on his claims for (1) false arrest and imprisonment under § 1983; (2) retaliation and chilling of free speech under § 1983; (3) excessive force under § 1983; (4) violations of the Bane Act, California Civil Code § 52.1; and (5) unconstitutionality of Los Angeles Municipal Code § 41.24(d).  (Mot. Summ. J. ("MSJ") at 1 (FAC Causes of Action 1-3, 4 Count 2, and 6).)

**II.  LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences from the evidence must be drawn in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986).  If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256.  Summary judgment is warranted if a

party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996).  Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. ANALYSIS**

Plaintiff has moved for partial summary judgment on five causes of action.  (MSJ at 1.)

**A.   Causes of Action Under § 1983: False Arrest, Free Speech, and Excessive Force**

"A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of his 'rights, privileges, or immunities secured by the Constitution and laws' by a person or entity, including a municipality, acting under the color of state law."

1  <u>Awabdy v. City of Adelanto</u>, 368 F.3d 1062, 1066 (9th Cir. 2004)

2  (quoting 42 U.S.C. § 1983).  "To state a cause of action under

3  section 1983, [a plaintiff] must show that (1) [the defendant]

4  acted under color of state law; and (2) [the defendant] deprived

5  [the plaintiff] of rights secured by the Constitution or federal

6  law."  <u>Barry v. Fowler</u>, 902 F.2d 770, 772 (9th Cir. 1990).

7             **1.  False Arrest/Imprisonment**

8        Plaintiff's false arrest claim requires a showing that his

9  warrantless arrest was unreasonable because it lacked probable

10 cause.  <u>See</u> <u>id.</u>  That the arrest was unlawful is also a crucial

11 element to his false imprisonment charge: "In the context of a

12 Section 1983 claim for false arrest and false imprisonment, a

13 plaintiff must show that the defendant lacked probable cause to

14 arrest and subsequently detained them."  <u>Hernandez v. Cnty. of</u>

15 <u>Marin</u>, No. C 11-03085 JSW, 2012 WL 1207231, at *8 (N.D. Cal. Apr.

16 11, 2012).  "Probable cause exists when there is a fair probability

17 or substantial chance of criminal activity."  <u>U.S. v. Patayan</u>

18 <u>Soriano</u>, 361 F.3d 494, 505 (9th Cir. 2004).  This determination is

19 made "based upon the totality of the circumstances known to the

20 officers at the time."  <u>Id.</u>

21       Defendants claim the arresting officers had probable cause in

22 this case.  They claim that Plaintiff was arrested for violating

23 California Penal Code § 602.1(a), pointing to Plaintiff's Exhibit

24 11, which appears to have cut out part of the Notice to Appear, and

25 exhibits to depositions of Officer Anthony and Wells that include

26 the Notice to Appear, but which are illegible due to the

27 reproduction quality.  (<u>See</u> Opp'n at 4 (citing Pl. Ex. 11; Pessis

28 Decl. Ex. C (ex. 3 to Anthony Dep.)); <u>see also</u> Pessis Decl. Ex. D

1   (ex. 2 to Wells Dep.).)  But Defendants claim that they had

2   probable cause to accept Plaintiff's arrest because the Farmers

3   Market had a ban notice in place that barred Plaintiff from the

4   property for making threats against the security officers,

5   Plaintiff was on the property and thus criminally trespassing, and

6   Plaintiff refused to leave after being asked.[1]  (Opp'n at 6-7.)

7        Plaintiff claims he was wrongfully arrested for trespassing

8   based on an illegitimate ban notice (whether under § 602.1(a) or §

9   602(t)), and that the arrest was really based on his expressive

10  conduct, which is what led to security guard Boyd's allegations

11  that Plaintiff threatened him on December 8, 2013.  (See generally

12  MSJ; Pl. Separate Statement of Uncontroverted Facts, Dkt. No. 45-5,

13  ¶¶ 30-31.)  But Plaintiff acknowledges that his citation states

14  that § 602.1(a) is the basis of his arrest: "Subject refused to

15  leave the premises of Farmers Market after being requested to leave

16  by security numerous times.  Subj was obstructing those attempting

17  to carry on business & their customers.  Subj placed under ctzn

18  p.p. arrest by security Troy Boyd."  (MSJ at 14 (quoting Notice to

19  Appear at Pl. Ex. 11).)  Either way, Plaintiff claims that none of

20  the statutory sections permitted his arrest because he was in

21  Veggie Grill, which is property leased from the Farmers Market, and

22  because he could not be arrested based on alleged misdemeanor

23

24        [1]    It appears that Defendants also make a claim to qualified
    immunity, although it lacks argument: "In the event this Court
25  concludes Plaintiff's arrest lacked probable cause, the law at the
    time of Plaintiff's arrest (January 19, 2014) did not put the
26  officers on notice that their actions were in violation of
    Plaintiff's constitutional rights and therefore, they are entitled
27  to qualified immunity."  (Opp'n at 8-9.)  This sentence is
    insufficient for the Court to rule as a matter of law that the
28  Defendants are protected by qualified immunity in this case.

threats against the security officers that occurred over a month before the citizen's arrest.  (MSJ at 12-13, 18-20.)

The California trespassing statutory sections at issue here[2] state:

> (a)  Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor, punishable by imprisonment in a county jail for up to 90 days, or by a fine of up to four hundred dollars ($400), or by both that imprisonment and fine.

Cal. Penal Code § 602.1(a).  Also relevant here is:

> (t)  (1)  Entering upon private property, including contiguous land, real property, or structures thereon belonging to the same owner, whether or not generally open to the public, after having been informed by a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, that the property is not open to the particular person; or refusing or failing to leave the property upon being asked to leave the property in the manner provided in this subdivision.

_____

[2]  Defendants also claim that other statutory subsections provide probable cause in this case: § 602(k), (m). (See Opp'n at 7-10.)

The Court notes that Cal. Penal Code § 602(m) does not apply to this case because it applies to attempted dispossession of private property — that is, continuous, nontransient presence. See Edgerly v. City & Cnty. of S.F., 599 F.3d 946, 954 (9th Cir. 2010); Bolbol v. City of Daly City, 754 F. Supp. 2d 1095, 1109 (N.D. Cal. 2010).

To the extent that subsection (k) does apply, it, like § 602.1(a), also requires a showing of entering the property "for the purpose of injuring any property or property rights or with the intention of interfering with, obstructing, or injuring any lawful business or occupation carried on by th owner of the land, the owner's agent, or the person in lawful possession."

11

        (2)   This subdivision applies only to a person who has been convicted of a crime committed upon the particular private property.

        (3)   A single notification or request to the person as set forth above shall be valid and enforceable under this subdivision unless and until rescinded by the owner, the owner's agent, or the person in lawful possession of the property.

        (4)   Where the person has been convicted of a violent felony, as described in subdivision (c) of Section 667.5, this subdivision applies without time limitation. Where the person has been convicted of any other felony, this subdivision applies for no more than five years from the date of conviction. Where the person has been convicted of a misdemeanor, this subdivision applies for no more than two years from the date of conviction. Where the person was convicted for an infraction pursuant to Section 490.1, this subdivision applies for no more than one year from the date of conviction. This subdivision does not apply to convictions for any other infraction.

Cal. Penal Code § 602(t).

Here, it appears that there is no evidence that Plaintiff was "intentionally interfer[ing] with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers," which is the first element in a subsection (a) trespass. No one disputes that Plaintiff was arrested while he was waiting in line to order food at Veggie Grill. There was no deposition testimony or evidence that Plaintiff had obstructed or intimidated or in any other fashion interfered with any of the businesses in the Farmers Market area on January 19, 2014, other than Defendants' contention that Plaintiff's presence at the Farmers Market was sufficient to interfere with the business and the note in the Notice to Appear.

1  (See Opp'n at 6-7; Pessis Decl., Ex. C (Anthony Dep.) at 41-51;

2  Boyd Decl. ¶ 4.)  Defendants' only basis for accepting the arrest

3  of Plaintiff was that the ban notice turned his presence into a

4  trespass whether that presence was related to ordering food at

5  Veggie Grill or engaging in expressive conduct by passing out

6  pamphlets promoting veganism and animal rights.

7      Further, there is no evidence that subsection (t) applies here

8  or could reasonably be thought to apply here because Plaintiff had

9  not been charged, much less convicted, of any crime on the

10 particular private property, even if the LAPD officers were

11 investigating the criminal threats.  However, this is the statutory

12 section that allows otherwise public or private-public locations to

13 ban individuals based on criminal activity on the property.  Thus,

14 the ban notice that the security guards wrote up appears to be an

15 attempt to put Plaintiff's conduct under this statutory subsection

16 and make his presence a misdemeanor trespass based on the alleged

17 threats.[3]

18     The LAPD officers had a continued relationship with Plaintiff

19 and the security officers and thus the LAPD did not come to the

20 situation on January 19, 2014, without any context.  The officers

21 had regularly protected Plaintiff's right to engage in expressive

22 conduct prior to the January 19, 2014 arrest.  However, the

23 officers also investigated Boyd's complaint that Plaintiff had

24

25     [3]    In one sentence, Defendants also claim that certain
statutes support their argument that Plaintiff's state law claims
26 for false arrest fails: "Further, the state law claim for false
arrest fails as a matter of law pursuant to the following
27 authorities: Penal Code Sections 142, 834, 836, as well as 836.6,
837 and 847."  (Opp'n at 9.)  This is also insufficient at the
28 summary judgment stage to present an argument for the legality of
the officer's conduct.

threatened him, which was the basis of the ban notice.  (<u>See, e.g.</u>,
Pl. Ex. 7.)  According the investigation report, Boyd reported on
January 9, 2014, that after confronting Plaintiff on December 8,
2013, and asking him to pamphlet elsewhere, Plaintiff responded:
"you don't know what the fuck you are talking about, and you are
not the fucking police, you are violating my 1st Amendment[]
Rights," and "you guys really fucked up []now, I'm going to fuck
you up, come on to the public property, so that I could kick your
asses."  (<u>Id.</u>)  This made Boyd afraid "for his safety" and resulted
in the call to the police.  (<u>Id.</u>)  The LAPD also called witnesses
from Trader Joe's to independently confirm this account.  (<u>Id.</u>)

Thus, the situation in this case is somewhat in between the
principal cases the parties cite.  In <u>Hall v. City of Fairfield</u>,
the jury found that the arrested teenagers were not intentionally
interfering with the restaurant's business; thus, the court upheld
the false arrest claim.  No. 2:10-cv-0508 DAD, 2014 WL 1303612
(E.D. Cal. Mar. 31, 2014).  There, the teenagers left the
establishment and were waiting for their driver in the parking lot
when they were arrested for trespassing, after the officer issued
multiple warnings to leave, starting inside the restaurant.  <u>Id.</u>
This was found to be a false arrest because the teenagers were not
interfering with business once they were outside.  On the other
hand, the case <u>Blakenhorn v. City of Orange</u> involved a known gang
associate who was issued a ban notice from a mall, the plaintiff
knew he was banned, and he came back to the mall anyway.  485 F.3d
463, 472-75 (9th Cir. 2007).  In that case, the arresting officers
knew of the man's gang association and ban notice, and the Ninth
Circuit held that there was probable cause for the officers to

14

arrest for trespassing.  Id.  The court explained that because the officers knew these facts and that the officers could have believed that the man returned to the mall with the intention of interfering with business or harming the property, they had probable cause to arrest under California Penal Code section 602(j) (now (k)) and (n) (now (o)).  Id.

This case is not quite like the teenagers, who had not been issued a ban notice or repeatedly returned to the same location or (allegedly) made threats to security.  But Plaintiff here is not a known gang associate who had been issued a ban notice, previously been seen at a gang fight at the mall, and began a physical altercation when asked to leave, leading to his arrest.  Here, Plaintiff's telling of the facts show that the officers had not believed that the alleged threats amounted to cause to arrest Plaintiff or prevent him from engaging in protected expressive activity until January 19.  However, Defendants point out that if the ban was valid and they were accepting a citizen's arrest based on violation of a valid ban that made mere presence a trespass, then the arrest would be based on probable cause.

What is most problematic for Defendants is the fact that there does not appear to be any evidence that Plaintiff was "intentionally interfering with any lawful business or occupation carried on" at the Farmers Market either by his leafleting for over an hour or by ordering food at Veggie Grill.  Thus, it is not clear under what statutory section the officers could have reasonably believed there was a basis for arresting Plaintiff on January 19. That day had no connection to the criminal threats or ban notice, despite the security officer's belief, because there had been no

charge based on the allegations underlying the ban much less a conviction under subsection (t), which allows otherwise public locations to ban particular individuals based on prior criminal conduct.  And under subsection (a), there would need to be some evidence of interference with business, but neither the LAPD nor the security officers observed any interference by Plaintiff on the day Plaintiff was arrested.  In fact, the LAPD performed no investigation or observation of Plaintiff other than to accept his arrest at Veggie Grill, where there was no indication that he was engaged in business interference.  Therefore, there is a contested issue of fact as to whether there was probable cause to arrest Plaintiff on January 19, 2014.

### 2.  First Amendment

A violation of a plaintiff's First Amendment rights can also be the basis of a § 1983 claim.  "To establish that . . . First Amendment rights were violated, [a plaintiff] must prove that chilling . . . political speech was a substantial or motivating factor in the defendants' wrongful conduct."  Awabdy, 368 F.3d at 1071.  For First Amendment retaliation claims, there must be a "nexus between the exercise of . . . First Amendment rights and [the] prosecution."  See Karam v. City of Burbank, 352 F.3d 1188, 1194 (9th Cir. 2003).[4]

_____

[4]     Plaintiff claims that Defendants are analyzing the wrong question or theory of his cause of action in stating that there is a nexus requirement in First Amendment retaliation claims.  (Reply, Dkt. No. 61, at 11.)  However, Plaintiff does not explain what theory of the § 1983 First Amendment cause of action he is pursuing, or how that theory does not require a nexus between the official's action and the plaintiff's expression.

1    Here, Defendants claim that there can be no § 1983 claim based
2    on the First Amendment because of a lack of nexus: Plaintiff was
3    arrested while waiting to order food at Veggie Grill, not while
4    engaged in expressive conduct.  (Opp'n at 11.)  Further, as argued
5    above, Defendants claim that the arrest was based on violation of
6    the ban notice, which meant Plaintiff was trespassing, and thus the
7    arrest was not based on any expressive conduct.

8    However, as with the false arrest claim, there are some
9    disputed facts, including those underlying the officers' knowledge
10   and the basis of the ban notice.  Further, it seems problematic
11   that the LAPD can rely on a private ban notice of quasi-public
12   spaces like a mall (or the Farmers Market) of a person who has not
13   been convicted of (or even charged with) a crime on that property,
14   and that ban could operate just to bar expressive conduct rather
15   than protect public safety or some other acceptable purpose.

16   That is, it appears undisputed that the officers here did not
17   do any investigation of Plaintiff's conduct on January 19 prior to
18   accepting his arrest in Veggie Grill, unlike in Blankenhorn where
19   the officers confronted the gang associate, which escalated into a
20   fight, and then an arrest after a struggle.  Further, almost no
21   investigation was done related to the ban notice other than
22   officers interviewing the security guard Boyd about alleged threats
23   and calling witnesses from Trader Joe's who stated that Plaintiff
24   was handing out pamphlets "aggressively" and yelled obscenities at
25   security, including "I will kick your ass, you want to fight, and
26   you want to fight."  (Pl. Ex. 7 (police report).)

27   While these witnesses corroborate the security guard's
28   allegation that Plaintiff threatened him, the LAPD did not

17

undertake an independent investigation of Plaintiff.  Instead, the
officers were told that Plaintiff was banned, that Plaintiff knew
he was banned (which it appears Plaintiff acknowledged not only in
his deposition but also at the time of arrest), and that Plaintiff
still came on to the property and was at Veggie Grill at the time
(not engaged in expressive conduct).  The officers had conflicting
information as to whether Plaintiff had previously been engaged in
expressive conduct by leafleting for over an hour before taking a
break to get food at Veggie Grill.  The officers did not undertake
any independent assessment of the situation nor see any indication
that Plaintiff was interfering with business other than to be
present on the property.

Further, while there may be no facial link between the arrest
and expressive conduct, if the arrest were based on a ban notice
that was itself based on expressive conduct rather than threats of
violence, then there would be a potential link between the arrest
and Plaintiff's First Amendment conduct.  If a private security
officer could issue ban notices to all individuals who protested or
leafleted on their property and have the LAPD enforce the ban by
arresting trespassers, then it would make the First Amendment
rights of those protesters and leafleters almost nonexistent.

Therefore, the Court finds that summary judgment is not
appropriate for Plaintiff or Defendants.  There are material
factual disputes about the circumstances of Plaintiff's arrest
based on a private ban notice of an individual who had not bee
criminally convicted.  The officers did not observe Plaintiff prior
to approaching him in line at Veggie Grill that day, where he was
clearly not obstructing or intimidating customers or engaged in any

18

1  other conduct in violation of § 602.1(a), other than if the ban

2  notice was sufficient to result in his arrest for trespass for any

3  reason that he was on the property.  Because Defendants have not

4  shown the Court that such a statement about private, noncriminal

5  ban notices is true, summary judgment is denied as to both parties.

6         **3.  Excessive Force**

7         Lastly, an excessive force claim requires "a fact-intensive

8  inquiry requiring attention to all circumstances pertinent to the

9  need for the force used." Velazquez v. City of Long Beach, 793

10 F.3d 1010, 1024 (9th Cir. 2015).  "Because the excessive force and

11 false arrest factual inquiries are distinct, establishing a lack of

12 probable cause to make an arrest does not establish an excessive

13 force claim, and vice-versa." Beier v. City of Lewiston, 354 F.3d

14 1058, 1064 (9th Cir. 2004).

15        The Court finds that there are no facts pled or in the

16 evidence provided with the Motion that would support a cause of

17 action under § 1983 for excessive force.  Even if the arrest was

18 unlawful — which it is not clear it was — an officer may use

19 reasonable force to effectuate the arrest.  Here, the only facts

20 for excessive force (which are disputed by Defendants but the Court

21 is assuming they are true for the purposes of this Motion) are that

22 Plaintiff informed the security guards and LAPD officers of a pre-

23 existing shoulder injury that was causing him pain based on the

24 handcuffs being tight behind his back and that the guards and LAPD

25 officers did not do anything to alleviate that pain.  Those facts

26 alone are not sufficient to constitute excessive force so as to

27 violate Plaintiff's Fourth Amendment rights.  Because there are no

28 facts argued in Plaintiff's summary judgment motion or alleged in

1   the complaint to support this claim, the Court grants summary

2   judgment against Plaintiff based on Defendant's arguments and the

3   Court's own analysis that the allegations as a matter of law are

4   insufficient to support this cause of action.

5       **B.   Cal. Civ. Code § 52.1: Bane Act Violations**

6       "California's Bane Act, Civil Code § 52.1, provides that a

7   person 'whose exercise or enjoyment' of constitutional rights has

8   been interfered with 'by threats, intimidation, or coercion' may

9   bring a civil action for damages and injunctive relief.  The

10  essence of such a claim is that 'the defendant, by the specified

11  improper means . . . tried to or did prevent the plaintiff from

12  doing something he or she had the right to do under the law or

13  force the plaintiff to do something he or she was not required to

14  do.'" Boarman v. Cnty. of Sacramento, 55 F. Supp. 3d 1271, 1287

15  (E.D. Cal. 2014) (quoting Austin B. v. Escondido Union Sch. Dist.,

16  149 Cal. App. 4th 860, 883 (2007)).  The key element in Bane Act

17  cases is "the element of threat, intimidation, or coercion."

18  Shoyoye v. Cnty. of L.A., 203 Cal. App. 4th 947, 959 (2012).  "The

19  act of interference with a constitutional right must itself be

20  deliberate or spiteful." Id. "The statute requires a showing of

21  coercion independent from the coercion inherent in the wrongful

22  detention [or other tort] itself."  Id.

23      Plaintiff relies on the same underlying facts and argument as

24  he made for the § 1983 causes of action described above to support

25  his Bane Act cause of action.  (MSJ at 9-10.)  Defendants argue

26  that there is no basis as a matter of law to support a Bane Act

27  claim here because there has been no showing that there was

28  coercion or intimidation against Plaintiff exercising a

1 constitutional right that is independent from the coercion inherent

2 in the alleged false arrest/detention, First Amendment retaliation,

3 and excessive force.  (Opp'n at 14-15.)

4      As described above, the underlying coercion or potential

5 constitutional violations in the § 1983 causes of action are not

6 certain, which alone is sufficient to preclude summary judgment for

7 Plaintiff on these claims.  Further, Plaintiff would need to

8 present a theory of a Bane Act violation that went beyond the

9 allegations of his § 1983 violations because the Bane Act requires

10 additional coercion.  Therefore, the Court denies Plaintiff's

11 Motion for Summary Judgment on this claim.

12      **C.   L.A. Municipal Code § 41.24(d): Facially Unconstitutional**

13      Plaintiff's argument that L.A. Municipal Code § 41.24(d) is

14 unconstitutional is premised on the fact that the subsection lacks

15 any safety valve or exception for expressive conduct.  (MSJ at 20-

16 23.)

17      However, this appears to be a mistaken premise: subsection (h)

18 states that the entire municipal code section "shall not apply in

19 any of the following instances: . . . (4) when persons are engaging

20 in activities protected by the United States Constitution or the

21 California Constitution or when persons are engaging in act which

22 are expressly required or permitted by any provision of law."  L.A.

23 Municipal Code § 41.24(h)(4); see full text of ordinance attached

24 to Order.

25      Therefore, it does not appear that there is any legal basis to

26 hold the statute unconstitutional on its face.  Plaintiff's Partial

27 Motion for Summary Judgment on this cause of action is denied.  The

28 Court sua sponte grants judgment as a matter of law against

1  Plaintiff on this cause of action because there is no facial

2  argument that the statute is unconstitutional.

3    **D. Allegations Against Police Chief Beck**

4    Plaintiff raises several causes of action against Police Chief

5  Beck in this suit: § 1983 causes of action based on unlawful

6  arrest/imprisonment, First Amendment retaliation, <u>Monell</u> claims,

7  and failure to train;[5] state law causes of action based on

8  negligence and ratification; and causes of action for declaratory

9  and injunctive relief.  (FAC at 12-29.)  Defendants argue that

10  there are no facts pled, argued, or supported by exhibits that show

11  Police Chief Beck was personally involved in any of the events that

12  related to Plaintiff's arrest.  (Opp'n at 9.)

13    The Court holds that Police Chief Beck's liability remains at

14  issue in the case as no party has sought summary judgment on the

15  <u>Monell</u> issues.  However, there are no personal allegations against

16  Police Chief Beck.  Therefore, all causes of action against Police

17  Chief Beck that relate to any personal allegations against him are

18  DISMISSED.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ────────────

27    [5] Plaintiff also made a § 1983 claim for excessive force
against Police Chief Beck, but as this Order explains, the Court

28  grants summary judgment against Plaintiff on this cause of action
as to all Defendants.

**IV.   CONCLUSION**

     For all the reasons stated above, the Court DENIES Plaintiff's Partial Motion for Summary Judgment.  The Court GRANTS summary judgment against Plaintiff on (1) the claim that L.A. Municipal Code § 41.24(d) is facially unconstitutional and (2) the § 1983 claim based on excessive force.  Certain claims against Defendant Police Chief Beck are DISMISSED as discussed above.

IT IS SO ORDERED.

Dated: May 12, 2016

                         DEAN D. PREGERSON
                         United States District Judge

SEC. 41.24.   TRESPASS ON PRIVATE PROPERTY.
        (Added by Ord. No. 168,500, Eff. 2/4/93.)

    (a)   No person shall enter or be present upon any private property or portion of private property not open to the general public without the consent of the owner, the owner's agent, or the person in lawful possession, where signs forbidding entry are displayed as provided in Subsection (f).

    (b)   No person shall enter upon any private property or portion of private property, not open to the general public, who within the immediately preceding six months was advised as follows: to leave and not return, and that if he or she returns to the property within six months of the advisement he or she will be subject to arrest.   This advisement must be made by the owner, the owner's agent, the person in lawful possession or a peace officer at the request of the owner, owner's agent or person in lawful possession. The advisement shall be documented in writing by the individual making it and shall include the name of the person advised, the date, approximate time, address and type of property involved.   Such documentation shall be retained for a minimum period of one year.   This subsection is not violated if a person so advised enters the property within the designated six month period, if he or she has been expressly authorized to do so by the owner, the owner's agent or a person in lawful possession.

    (c)   Entry requiring Express Consent of Owner.

        1.   No person shall enter or be present upon private property not open to the general public without the express consent of the owner or the owner's agent when that person:

            A.   has been convicted of any violation of the law involving narcotics, prostitution, vandalism, weapons, disturbance of the peace, loitering, threat to commit a violent act, or a violent act, on that same private property not open to the general public, whether or not such property is posted in accordance with Subsection (f); and

            B.   has, subsequent to the conviction been told to leave and not return to that same property, by the owner, the owner's agent or a peace officer at the request of the owner or the owner's agent.

        2.   The request to leave must be made within six months of the date of the conviction and shall be documented in writing by the individual making the

24

request. The documentation of the request shall include the name of the person being requested to leave, the date, the approximate time, the address and the type of property involved.

3.    This subsection applies even if the person has the consent of a person in lawful possession but does not apply to persons who have a right of lawful possession to the subject property.  An individual who has the consent of the person in lawful possession may not be refused entry by the owner or the owner's agent for a period exceeding twelve months, computed from the date of the request.

(d)    No person shall enter or be present upon any private property or portion of private property open to the general public who within the immediately preceding 24 hours was advised to leave and not return, and that if he or she returns to the property within 24 hours of the advisement, he or she will be subject to arrest.  This advisement must be made by the owner, the owner's agent, the person in lawful possession or a peace officer at the request of the owner, owner's agent or the person in lawful possession. A request to leave  may be made only if it is rationally related to the services performed or the facilities provided.

(e)    The term "private property" shall mean any real property, including but not limited to, buildings,  structures, yards, open spaces, walkways, courtyards, driveways, carports, parking areas and vacant lots, except land which is used exclusively for agricultural purposes, owned by any person or legal entity other than property owned or lawfully possessed by any governmental entity or agency.

(f)    For purposes of Subsection (a), one sign must be printed or posted in a conspicuous manner at every walkway and driveway entering any enclosed property or portion thereof and at a minimum of every fifty feet along the boundary of any unenclosed lot. This requirement is met if at least one sign is  conspicuously printed or posted on the outside of every structure on such property, so as to be readable from each walkway and driveway entering such property. The sign shall state as follows:

THIS PROPERTY CLOSED TO THE PUBLIC
No Entry Without Permission
L.A.M.C. SEC. 41.24

The language "THIS PROPERTY CLOSED TO THE PUBLIC No Entry Without Permission" on said sign shall be at least two inches high.

1    (g)   When a peace officer's assistance in dealing with a trespass is requested, the owner, owner's agent, or the person in lawful possession shall make a separate request to the peace officer on each occasion. However, a single request for a peace officer's assistance may be made to cover a limited period of time not to exceed twelve months when such request is made in writing and provides the specific dates of the authorization period.

**(h)   This section shall not apply in any of the following instances:**

    (1)   when its application results in, or is coupled with, any act prohibited by the Unruh Civil Rights Act, or any other provision of law relating to prohibited discrimination against any person;

    (2)   when its application results in, or is coupled with, an act prohibited by Section 365 of the California Penal Code, or any other provision of law relating to the duties of innkeepers;

    (3)   when public officers or employees are acting within the course and scope of their employment or in the performance of their official duties; or

    **(4)   when persons are engaging in activities protected by the United States Constitution or the California Constitution or when persons are engaging in acts which are expressly required or permitted by any provision of law.**

(i)   Violation of any of the provisions of this section shall be a misdemeanor or an infraction.

(j)   If any part or provision of this section, or the application thereof to any person or circumstance, is held invalid, the remainder of the section, including the application of that part or provision to other persons or circumstances, shall not be affected thereby and shall continue in full force and effect.  To this end, the provisions of this section are severable.

L.A. Municipal Code § 41.24 (emphasis added) (available at http://library.amlegal.com/nxt/gateway.dll/California/lamc/municipalcode?f=templates$fn=default.htm$3.0$vid=amlegal:losangeles_ca_mc)