O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRIAN HAN, | ) | Case No. 2-14-cv-08582-DDP-JPR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PRETRIAL ORDER** |
| | ) | |
| CITY OF LOS ANGELES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

During the pretrial conference, the parties raised issues pertaining to the certain claims and defenses the parties intend to assert at trial. Having heard oral argument on the parties' positions and reviewed the memoranda of contentions of fact and law, the court adopts the following Order pursuant to its authority under Rule 16(c)(2) to "formulat[e] and simplify[] the issues, and eliminate[e] frivolous claims or defenses."[1]

---

[1] As the Advisory Committee Notes to the 1983 Amendment explain:
> The reference . . . to "formulation" is intended to clarify and confirm the court's power to identify the litigable issues. It has been added in the hope of promoting efficiency and conserving judicial resources by identifying the real issues prior to trial, thereby saving time and expense for everyone. The notion is emphasized by expressly authorizing the elimination of frivolous claims or defenses at a pretrial conference. There is no reason to require that

**A. State Law Battery Claim**

Plaintiff has stated that he intends to assert a state law claim for battery against the officers who effected his arrest. (Pl. Memo. Contentions of Fact and Law ("Pl. Memo") 2.) The elements of civil battery are: "1. Defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; 2. Plaintiff did not consent to the contact; and 3. The harmful or offensive contact caused injury, damage, loss or harm to the plaintiff." *Fluharty v. Fluharty*, 59 Cal. App. 4th 484, 497 (1997), *as modified on denial of reh'g* (Dec. 16, 1997). Plaintiff's battery theory is that, in arresting Plaintiff, the officers touched him with an intent to harm or offend. (Pl. 2.) In Plaintiff's view, if the officers did not have probable cause to arrest him, then any subsequent touching that followed constitutes battery. (*Id.* 2.)

Under California law, a police officer is authorized to "use reasonable force to effect [an] arrest, to prevent escape or to overcome resistance." Cal. Penal Code 835(a). Furthermore, California courts have held that a state law battery claim against an officer "is the equivalent of a federal claim of excessive force." *Valdez v. City of San Jose*, No. 4:09-CV-0176 KAW, 2013 WL 6108052, at *8–9 (N.D. Cal. Nov. 18, 2013) (citing *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009)). "In both, a plaintiff must prove that the peace officer's use of force was unreasonable." *Id*. (citation omitted); *see also Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1993) (holding that a plaintiff must show unreasonable force as part of a prima facie case for battery). Thus, a plaintiff cannot maintain a battery action against a police officer solely on the theory that they were subject to an arrest without probable cause. Instead, the relevant question is whether the force an officer used "in effecting those arrests, irrespective of the probable cause issues, was reasonable." *Valdez*, 2013 WL 6108052 at *9.

---

this await a formal motion for summary judgment. Nor is there any reason for the court to wait for the parties to initiate the process called for in Rule 16(c)(1).
Fed. R. Civ. P. 16 advisory committee's notes.

2

In ruling on Plaintiff's Motion for Partial Summary Judgment, the court has already determined "that there are no facts pled or . . . evidence provided with the Motion that would support a cause of action under § 1983 for excessive force." (Dkt. 63 at 19.) Accordingly, the court granted Defendants summary judgment on Plaintiff's excessive force claim. Given that Plaintiff cannot maintain an excessive force claim under federal law, it follows as an application of California law that Plaintiff also cannot maintain a battery claim against the arresting officers under state law. *See Valdez*, 2013 WL 6108052 at *9.

**B. Defendants' Theories of Probable Cause**

A second point of contention between the parties during the pretrial conference was identifying the precise theory of probable cause Defendants intend to present at trial. The court assumes the parties' familiarity with the general facts of the case and will not recount them in full here. However, the court notes briefly that this case arises out Plaintiff Brian Han's activities at the Gilmore Farmers Market (the "Market") in Los Angeles, California. (*See generally* First Am. Compl. ("FAC").) Han is a member of a vegan advocacy group who distributed pamphlets promoting veganism at the Market on several occasions. (Dkt. 63 at 1.) On December 8, Plaintiff was leafletting outside the Trader Joe's at the Market when security guards told him to stop and leave the premises. (*Id.* 2.) The precise events on this date are disputed by the parties. Plaintiff contends that the private security guards called the Los Angeles Police Department ("LAPD") to remove him from the property. When LAPD arrived, they informed the Market's security that Plaintiff had a constitutionally-protected right to be on the property. At the end of this encounter, Plaintiff was not immediately evicted from the property—Plaintiff states that he went to eat at the Veggie Grill, also at the Market, afterwards—but all parties agree that the Market's security guards issued a "ban notice" about Plaintiff permanently barring him from the property for any purpose. Defendants' view of the day differs to the extent that they allege they were later informed that Plaintiff had made physical threats towards the security officer, Hal Boyd, who directed plaintiff to leave the market

on December 8. It was for this reason, they were allegedly told, that Plaintiff was issued a "ban notice." It remains to be decided at trial the precise reasons why the ban notice was issued and how much the LAPD knew about those reasons.

After that first incident, Plaintiff returned to the market to pamphlet on several occasions, including on December 20 and 27, 2013 and January 5 and 12, 2014. (Dkt. 63 at 3-4.) Plaintiff reports that LAPD was called to the Market on each of these occasions but Plaintiff was never arrested. On January 19, Plaintiff returned to pamphlet at the Market. He alleges that he had no interaction with the Market's security or LAPD while handing out pamphlets that day. Plaintiff then went to dine at the Veggie Grill. While in line to order food, Boyd allegedly approached Plaintiff, along with LAPD, and informed him that he was banned from the premises. Boyd then placed Plaintiff under arrest and turned him over to LAPD. (*Id.* 4-5.) During the course of the pretrial conference, Defendants' counsel represented to the court that Defendants intend to argue that officers had probable cause to arrest Plaintiff on January 19, 2014 for violating California Penal Code Sections 602(k), 602(o), and 602.1(a). (Defs.' Memo. Contentions of Fact and Law ("Defs.' Memo") 4.). There was confusion among the parties about the requirements and applicability of these provisions, as well as how they interact with the "ban notice" issued to Plaintiff. In order to simplify issues for trial and guide the parties' argument, the court has reviewed the provisions at issue, as well as applicable case law, and sets forth the following points.

1. Cal. Penal Code §§ 602(k) & 602.1(a)

Cal. Penal Code § 602(k) sets forth the misdemeanor trespass of:

> Entering any lands, whether unenclosed or enclosed by fence, for the purpose of injuring any property or property rights or with the intention of interfering with, obstructing, or injuring any lawful business or occupation carried on by the owner of the land, the owner's agent, or the person in lawful possession. . . .

Cal. Penal Code § 602.1(a) provides:

> (a) Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of

4

the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor . . . .[2]

As set forth in the court's prior Order, both these provision apply only where a person has entered with "the purpose of injuring . . . property rights" or "intention of interfering with, obstructing, or injuring any lawful business." (*See* Dkt. 63 at 11 n.2) The court is not aware of any cases, nor have the Defendants cited any, that support the proposition that the mere existence of a ban notice against an individual satisfies the requirement that a person be on property, private or open to the public, with a prohibited purpose. Indeed, even the principal case relied on by Plaintiffs, *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), does not hold that a reasonable officer could have concluded a person who was on a property where they are subject to a "ban notice" had "the purpose of injuring any property or property rights" or "with the intention of interfering with, obstructing, or injuring any lawful business." *Blankenhorn*, 485 F.3d at 473. Instead, the *Blankenhorn* court focused on the fact that the plaintiff was a known gang member who had been involved in violent altercations at the mall in question. *Id.* Thus, to the extent that Plaintiffs intend to argue that the officers had probable cause to arrest Plaintiff pursuant to Section 602(k) or Section 602.1(a), they must rely on evidence that "at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that" Plaintiff was on the property with a prohibited purpose. *See United States v. Jensen*, 425 F.3d 698, 704 (9th Cir.2005). The fact that Plaintiff was subject to a ban notice is irrelevant to whether Plaintiff was at the Market on the occasion he was arrested with "the intention of interfering with, obstructing, or injuring any lawful business or occupation," as prohibited by Section 602(k), or that he was "intentionally interfer[ing] with any lawful business or occupation

---

[2] Cal. Penal Code § 602.1(c)(2) includes a carve out that the section "shall not apply to . . . [a]ny person on the premises who is engaging in activities protected by the California Constitution or the United States Constitution."

5

. . . by obstructing or intimidating those attempting to carry on business, or their customers," as prohibited by Section 602.1(a). The *conduct* underlying any previous ban notice may, however, be relevant to show a pattern of actions or for some other appropriate purpose.

### 2. Cal. Penal Code § 602(o)

Cal. Penal Code § 602(o) sets forth the misdemeanor trespass of:

> Refusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by (1) a peace officer at the request of the owner, the owner's agent, or the person in lawful possession, and upon being informed by the peace officer that he or she is acting at the request of the owner, the owner's agent, or the person in lawful possession, or (2) the owner, the owner's agent, or the person in lawful possession. The owner, the owner's agent, or the person in lawful possession shall make a separate request to the peace officer on each occasion when the peace officer's assistance in dealing with a trespass is requested. However, a single request for a peace officer's assistance may be made to cover a limited period of time not to exceed 30 days and identified by specific dates, during which there is a fire hazard or the owner, owner's agent, or person in lawful possession is absent from the premises or property. In addition, a single request for a peace officer's assistance may be made for a period not to exceed 12 months when the premises or property is closed to the public and posted as being closed. The requestor shall inform the law enforcement agency to which the request was made when the assistance is no longer desired, before the period not exceeding 12 months expires. . . .

In plain English, the statute makes it a crime to remain somewhere that is "not open to the general public" when asked by the owner of the place or some other authorized person to leave. While courts typically examine whether there was a request to leave, at least some courts have found that this provision applies when an individual is banned from a particular place "not open to the general public." *Foster v. Berkeley Police Dep't*, No. C 10-3703 SI, 2011 WL 5861266, at *7 (N.D. Cal. Nov. 22, 2011) (finding that officers had probable cause to believe plaintiff committed trespass where plaintiff had been banned from a radio station, which was not open to the general public).

Given the provision's focus on "land, real property, or structures . . . *not open to the general public*," Cal. Penal Code § 602(o) (emphasis added), courts faced with deciding whether an officer had probable cause to arrest for a Section 602(o) predictably direct their inquiry towards whether the place at issue was "open to the general public." *See,*

*e.g. McInerney v. City & Cty. of San Francisco*, 466 F. App'x 571, 573 (9th Cir. 2012) (finding there was no evidence the LeNain Hotel "was open to the public" and thus concluding that officers had probable cause to arrest plaintiff for violating Section 602(o)); *James v. City of Long Beach*, 18 F. Supp. 2d 1078, 1085 (C.D. Cal. 1998) (finding that a baseball stadium "only open to ticket-buyers" was not open to the general public and thus concluding that officers had probable cause to arrest for violation Section 602(n)).[3] Where a particular place is found to be open to be the general public, courts have concluded that Section 602(o) is inapplicable and held that officers cannot rely on the provision in showing that they had probable cause to arrest someone for refusing to leave. *See, e.g., Denney v. Takaoka*, No. C-92-0818 FMS, 1993 WL 96602, at *6 (N.D. Cal. Mar. 30, 1993) (finding that the "People's Park" owned by the University of California, Berkeley is "public property" and holding that "[then-] California Penal Code section 602(n) is therefore inapplicable, and probable cause did not exist to arrest [plaintiff] under that statutory provision") (citing *In re Bacon*, 240 Cal. App. 2d 34 (1st Dist., 1966), *disapproved on other grounds*, *In re Brown*, 9 Cal.3d 612, 624 (1973)). The court in *Denney* also denied defendants qualified immunity argument as to 602(n), finding that "a reasonable police officer would not think that a public park, a park for which one need not apply for admission, is 'not open to the general public.'" *Id*.

Turning to the situation at hand, the parties do not dispute that the relevant incidents all took place in areas that are typically considered open to the general public. Specifically, Plaintiff's leafletting activities took place in a public shopping center, *see generally Robins v. Pruneyard Shopping Ctr.*, 23 Cal. 3d 899, 905 (1979), *aff'd*, 447 U.S. 74 (1980), and his arrest took place at a restaurant, *see Hall v. City of Fairfield*, No. 2:10-CV-0508 DAD, 2014 WL 1303612, at *6 (E.D. Cal. Mar. 31, 2014) (holding that "a fast food restaurant [is] a property which is held open to the general public) (citing *Carolyn v.*

---

[3] When *James* was decided, the provision was labeled section 602(n). Section 602 was amended in 2003 and at that time the provision was designated section 602(o). *See* 2003 Cal. Legis. Serv. ch. 805 (S.B. No. 993).

*Orange Park Community Ass'n*, 177 Cal. App. 4th 1090, 1098 (2009) for the proposition that "California law defines restaurants as public accommodations") (collecting cases). Were the court writing on a blank slate, it would seem that the plain text of Section 602(o) is inapplicable to Plaintiff's refusal to leave a place "open to the general public," and thus cannot provided a basis for the officer's contention regarding probable cause to arrest. However, a line of cases epitomized in the Ninth Circuit's decision in *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), has complicated the analysis of whether Section 602(o) applies to a person who is subject to a ban notice or a no trespass order from a place otherwise open to the general public.

In *Blankenhorn*, the court considered whether officers had probable cause to arrest Gary Blankenhorn for being present at a shopping mall from which he had previously been evicted and permanently banned from entering. *Blankenhorn*, 485 F.3d at 467. Blankenhorn, "a known 18th Street gang member," had been evicted from the mall on a prior occasion and issued a "Notice Forbidding Trespass." *Id.* at 468-69. On a subsequent occasion, Blankenhorn was spotted at the mall running from an area where there was a reported gang fight. *Id.* at 469. Some four months later, Blankenhorn was again seen at the mall and approached by mall security. *Id.* Security asked to see Blankenhorn's identification, Blankenhorn responded in an angry manner, and the police arrived on the scene. *Id.* The police attempted to arrest Blankenhorn and a scuffle ensued before Blankenhorn was taken into custody. *Id.* at 469-70. The charges were eventually dismissed and Blankenhorn brought a civil rights suits alleging, *inter alia*, unlawful arrest.

The *Blankenhorn* defendants responded to the suit by asserting that the officers had probable cause to arrest Blankenhorn for violating several criminal trespass statutes, including Cal. Penal Code § 602(n) (now 602(o)). In addressing the 602(o) defense, the court found that "a reasonable officer could conclude that Blankenhorn's conduct satisfied the elements under [the] section." *Id*. at 475. With regards to the "open to the public" requirement, the court concluded without elaboration: "While a shopping center,

under California law, is generally 'open to the public,' the Notice Forbidding Trespass *arguably* rendered The Block 'not open to the public' with respect to Blankenhorn." *Id*. (citing *Picray v. Sealock*, 138 F.3d 767, 772 (9th Cir.1998)) (emphasis added). Courts since *Blankenhorn* have reiterated the view that a place typically "open to the general public"—and thus outside the purview of Section 602(o)—become "arguably . . . not 'open to the public'" as to particular individuals when they are issued a ban notice. *See Bashkin v. San Diego Cty.*, No. 08CV1450-WQH-WVG, 2010 WL 2010853, at *6 (S.D. Cal. May 20, 2010) ("Although Barona may be generally open to the public, the 'involuntary 'forcible-ban' letter' arguably rendered [Barona] 'not open to the public' with respect to [Plaintiff].") (internal quotations and citations omitted); *Sherman v. City of Davis*, No. CIV S-04-2320LKKEFBP, 2008 WL 553632, at *7 (E.D. Cal. Feb. 26, 2008), *aff'd*, 362 F. App'x 726 (9th Cir. 2010) (citing *James v. City of Long Beach*, 18 F. Supp. 2d 1078, 1085 (C.D. Cal. 1998) (same)).

A closer examination of *Blankenhorn*, however, suggests that adopting such a tortured interpretation of what qualifies as a space "not open to the general public" may not be appropriate. As an initial matter, there is the fact that *Blankenhorn* itself does not purport to conclusively interpret now-Section 602(o). Instead, the opinion relies on conditional language about how the ban notice "arguably rendered [the mall] 'not open to the public' with respect to Blankenhorn." *Blankenhorn*, 485 F.3d at 475. This circumspect reading is understandable given the court's focus on whether "reasonable officers could have concluded" that Blankenhorn was in violation of the trespass statutes. Thus, the court was not concerned with whether "Blankenhorn *was* trespassing," or even if the statute at issue applied to Blankenhorn's conduct, but "whether a reasonable officer had probable cause to think he could have been." *Id*. (emphasis in original). But this emphasis on how a reasonable officer might interpret the law is more appropriate for deciding the qualified immunity issue than determining whether the officer had probable cause to arrest in the first instance. *See Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005) (en banc) ("'If the officer's mistake as to what the law requires is reasonable, . . . the

1  officer is entitled to the immunity defense.'") (quoting *Saucier v. Katz*, 533 U.S. 194, 205
2  (2001)).

3   Furthermore, the only explanation for the *Blankenhorn* court's statement that a
4  place typically "open to the general public" becomes "not open to the general public" as
5  to a banned individual (and thus under the purview Section 602(o)) is a citation to the
6  Ninth Circuit's decision in *Picray v. Sealock*, 138 F.3d 767, 772 (9th Cir. 1998). However,
7  *Picray* too does not set forth an authoritative interpretation of California trespass law.
8  Instead, the passage in *Picray* relied on by the *Blankenhorn* court states "*Oregon v. Ocean*,
9  546 P.2d 150, 153 (Ore. 1976), holds that premises are not considered 'open to the public'
10 with regard to a particular individual when that person previously has been barred from
11 the property." *Picray* 138 F.3d at 772. *Picray* was reviewing a civil rights action concerning
12 Oregon law and describing the state's interpretation of the law at hand. This
13 interpretation of Oregon law provides little assistance to interpreting the California
14 statute at issue here. Oregon state law provides a definition of the phrase "open to the
15 public" for purposes of interpreting burglary and criminal trespass statutes. *See* Ore. Rev.
16 Stat. 164.205(4) ("'Open to the public' means premises which by their physical nature,
17 function, custom, usage, notice or lack thereof or other circumstances at the time would
18 cause a reasonable person to believe that no permission to enter or remain is required.").
19 Oregon courts have read this provision to mean someone banned from a place cannot
20 reasonably believe that "no permission to enter or remain is required" *Oregon v. Ocean*,
21 546 P.2d 150, 152–53 (Ore. 1976). Section 602 does not include any such definition of what
22 "open to the public" means and it would be troubling to import Oregon law into this
23 context without any additional explanation.

24   Neither *Blankenhorn* nor *Picray* require the conclusion that Cal. Penal Code § 602(o)
25 applies to a situation where an individual is issued a ban notice from a place that is
26 otherwise "open to general public," such as the Gilmore Farmer's Market. Rather, the
27 court concludes that the statute means what it plainly says, which is that a person
28 violates Section 602(o) if he remains on property not open to the general public after

10

being asked to leave by an authorized person. This conclusion is particularly warranted where, as here, there are First Amendment concerns with permitting the police to enforce a private actor's ban notice against an individual who otherwise may have only been exercising his constitutionally protected free speech rights. In fact, California courts interpreting the particular language of Section 602(o) have long expressed concern that an overly broad reading of the provision risks threatening core free speech concerns. For instance, in *People v. Madrano*, 78 Cal. App. 3d 198, 212 (Ct. App. 1978) *disapproved of on other grounds by Vista Verde Farms v. Agric. Labor Relations Bd.*, 29 Cal. 3d 307 (1981), the court considered whether labor organizers could be found guilty of criminal trespass when they entered a property for purposes of organizing farmworkers. Although the property as issue was undisputedly not open to the public, the court concluded that, given the circumstances of the case, "the free speech interest outweighed the property interest. The trespass law could not be constitutionally applied." *Id.* at 227.[4]

Likewise, in *In re Lundgren*, the court considered the appeal of a person who was arrested for violating then-Section 602(n) while protesting the Convair company in a sidewalk adjacent to the company's unsecured parking lot. Lundgren challenged her conviction on the grounds "that the statute cannot apply to her because the undisputed facts demonstrate she was on property 'open to the general public.'" *In re Lundgren*, 236 Cal. Rptr. 307, 311 (Ct. App. 1987), *as modified* (Feb. 26, 1987) (unpublished). The court began by recounting the events which led to the promulgation of subdivision (n) and noted that "[e]ven under the amendment, however, a person could not be guilty of committing a trespass unless it occurred on land which was 'not open to the general public.'" The court then explained the legislative intent behind the provision:

> The Legislature's determination to exclude some private land from the scope of the statute is understandable. To include land generally open to the public within the purview of the statute would have permitted property owners to arbitrarily choose which persons could be excluded from land

---

[4] The particular free speech concerns of labor organizers were considered so important that the modern iteration of Section 602(o) includes an express exception for "persons engaged in [certain] lawful labor union activities . . . ." Cal. Penal Code. § 602(o).

> otherwise open to the public. To impose criminal liability solely on an owner's subjective likes or dislikes not only presents a serious question of due process but difficult, if not impossible, problems of law enforcement. Faced with a statute which would be of questionable constitutional validity based on nothing more than the visceral responses of a property owner, the Legislature decided to exclude property open to the general public from section 602(n).

236 Cal. Rptr. at 312. After describing the intent of the provision, the court noted that "[i]t would, of course, be possible to adopt a very literal interpretation of the statute to the effect that where property is open to the public for any purpose, the statute by its terms is simply inapplicable . . . ."*Id.* Nonetheless, the court rejected this approach in favor a "reasonableness limitation:"

> In our view, persons using property to which the public is allowed access may nonetheless be guilty of trespassing if they use the property in a manner not reasonably related to the purpose for which the owner holds it open to the public. In this sense, property may be "open to the public" for certain purposes but not for others. The operative concept here, however, is the purpose for which the property has been opened to the public. Property owners are not free to define their purposes in such a way as to arbitrarily discriminate against members of the public because those persons happen to be manifesting some disagreement with the property owner.

*Id.*

In light of longstanding constitutional concerns, adopting a reading of Section 602(o) that permits a private owner to issue 'ban notices" against disfavored individuals, and thus decide who can remain on otherwise publicly accessible property abandons any fidelity to the long history of this provision and unacceptably burdens the First Amendment.

Of course, private property owners are still protected under the law. Where property is not open to the general public, California law provides a number of remedies to property owners to deal with trespassers. These include Section 602(k)'s prohibition on entering land "with the intention of interfering with, obstructing, or injuring and lawful business or occupation" and Section 602(o)'s prohibition on "[r]efusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave." Cal. Penal Code §§ 602(k), (o); *see generally id.* § 602. Where property is open to the general public, however, it is

incumbent on the property owner to accommodate the reasonable exercise of free speech. If an advocate crosses the line from protected speech to disruptive activity, the law protects the property owner upon a showing that the person "intentionally interfere[d] with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuse[d] to leave the premises of the business establishment after being requested to leave." In these situations, the individual can be arrested and removed. Further, serial offenders can be addressed through the use of escalating sanctions under existing law without resort to a system of ban notices. What the law does not permit, however, is for property owners to restrict an individual's access to a property open to the general public through the issuance of private ban notices. A ban notice does not constitute probable cause to arrest an individual on property open to the general public. In fact, Defendants' position may ultimately lead to more civil rights lawsuits, as officers are charged with the task of ascertaining the legal implications of privately-issued documents, which are potentially vague as to scope and duration.[5] Accordingly, there is no probable cause to arrest an individual for a Section 602(o) violation when that person is somewhere "open to the general public."

**IT IS SO ORDERED.**

Dated: December 5, 2016

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

---

[5] For example, consider a situation where the police are called to a public shopping mall, and private security points out an individual as barred by a private ban notice. The individual might respond that they never received the notice, or that they received it but it was over a year old, or that it did not cover this particular location. The City's proposed interpretation provides little guidance to an officer who must determine whether there is probable cause to arrest in such a situation.